496 A.2d 840

**STANDARD PIPELINE COATING CO., INC., Appellee,**

**v.**

**SOLOMON & TESLOVICH, INC., Appellant.**

**STANDARD PIPELINE COATING COMPANY, INC., Appellant,**

**v.**

**SOLOMON & TESLOVICH, INC., Appellee.**

Superior Court of Pennsylvania.

Argued March 26, 1985.

Decided July 26, 1985.

368

370

⇔6

Dina G. McIntyre, Pittsburgh, for appellant (at 865), for appellee (at 901).

Daniel M. Berger, Pittsburgh, for appellant (at 901), for appellee (at 865).

Before CIRILLO, MONTGOMERY and BUCHER,* JJ.

MONTGOMERY, Judge:

These cross-appeals arise from actions by the lower court, which denied a motion for a partial new trial by the verdict winner, and a motion for a new trial and/or a judgment n.o.v. by the party against whom the verdict was issued. On appeal, the verdict winner asserts that the lower court erred in: (1) disallowing a claim based upon previously unrecognized tort grounds; (2) denying a claim for punitive damages; and (3) refusing to mold the verdict to provide pre-judgment interest on the consequential damages awarded by the jury. On its appeal, the verdict loser contends that the trial court committed error by: (1) permitting the Appellant to amend its Complaint to conform to the verdict; (2) finding that there was sufficient proof of a novation, as well as direct damages and consequential damages; and (3) charging the jury on the degree of certainty required to establish a right to consequential damages. We find no merit in any of the claims of error, and affirm the holdings of the trial court on all issues.

* Honorable Wilson Bucher, Senior Judge, of the Court of Common Pleas of Lancaster County, Pennsylvania, is sitting by designation.

■ We must review the facts in a light most favorable to the verdict winner. See *Fannin v. Cratty*, 331 Pa.Super. 326, 480 A.2d 1056 (1984). The verdict winner, Standard Pipeline Coating Company [hereinafter "Standard"], the Appellant in No. 901 Pittsburgh, 1983, contracted to clear and coat the interior of a water pipeline that the verdict loser, Solomon & Teslovich, Inc. [hereinafter "Solomon"], the Appellant in No. 865 Pittsburgh, 1983, was constructing for United States Steel.[1] The terms of a contract between Standard and Solomon were set forth in a purchase order dated November 5, 1975. The portions relevant to this appeal provided that Standard would clean and coat approximately 67,000 feet of pipeline at a specific price per linear foot, and that payment would be made in three installments. More specifically, it was agreed that twenty-five (25%) per cent of the contract price would be paid on set-up, another twenty-five (25%) per cent would be paid upon completion of the cleaning of the pipeline, and the balance would be paid upon completion and acceptance of the coating. The purchase order also stated that work was to begin in November, 1975. Consequently, after the agreement was reached between Solomon and Standard, the latter promptly ordered the coating material and otherwise prepared to begin work. Standard's key employee, Goldworth Davis [hereinafter "Davis"], arrived at the job site on November 15, 1975, but informed by a Solomon representative that the pipeline would not be ready for Standard's work for another month. Davis, with other Standard personnel, arrived at the work site in December, 1975, with equipment and supplies for the job. However, the pipeline was still not sufficiently ready for Standard to begin its work. Davis ultimately made at least three more trips to the job site before he was able to begin work cleaning the pipeline in early February, 1976.

While the purchase order provided that Standard was to pay for all materials, Standard offered proof at trial that Solomon had agreed to advance the cost of the coating

1. Solomon, the general contractor on the job, was in the earthmoving, trucking, and coal business. Another subcontractor, Davis Industries, actually erected the pipeline.

materials. Standard submitted the invoice to Solomon, but it was never paid. Also, after Davis and other Standard personnel arrived at the site in December with equipment and supplies, Standard invoiced Solomon for twenty-five (25%) per cent of the contract price, on the basis that Standard was set up for the work. This invoice was also never paid by Solomon. By the middle of February, 1976, Standard had coated approximately half of the pipeline. Standard submitted another invoice, for further payment, which, like those previously submitted, was never paid.

In March, 1976, U.S. Steel inspected and subsequently rejected the coating that Standard had applied. The evidence at trial indicated that Standard offered to repair the defects when it coated the remaining pipeline. Whether this was agreed to by Solomon and U.S. Steel was unclear. By April, 1976, however, Standard was experiencing cash-flow problems, allegedly because Solomon had not made any payments. Of particular importance, evidence was presented that Standard could not obtain coating materials because of its unpaid bill to the only available supplier of such materials. Thus, Standard could not obtain additional coating materials to perform any other similar jobs.

Mark Shriver [hereinafter "Shriver"], President of Standard, met with Donald Gearhart [hereinafter "Gearhart"], a Vice President of Solomon, on April 22, 1976. Although the testimony conflicts as to the exact terms, some agreement was reached in an attempt to alleviate Standard's financial problems. Shriver testified that Gearhart told him, *inter alia*, that Solomon would pay the invoice for the coating materials and pay for all work done by May 15, 1976. In exchange, Standard was to relinquish to Solomon the right to finish the remainder of the job. Gearhart asserted that the terms of the agreement were set forth in a letter dated April 23, 1976, which was made an exhibit at trial. Solomon subsequently made only two $5,000.00 payments to Standard. In the meantime, Solomon formed a joint venture with another company to enter the pipeline coating business. The joint venture hired Davis and another Standard

employee, and ultimately completed the job. Standard sold its assets at the end of July, 1976, and ceased operations shortly thereafter.

Standard filed a Complaint in assumpsit and trespass on December 22, 1976, alleging that Solomon breached the contract by refusing to make progress payments and by preventing Standard from performing its obligations under the contract. Standard also alleged that Solomon's breach was "intentional, willful, malicious and done with the intent, purpose and effect of causing harm to the plaintiff." In this connection, in addition to direct and consequential damages, Standard sought punitive damages.

The trial was bifurcated into liability and damage phases. The jury found that the parties entered into a novation at the April 22, 1976 meeting, and that Solomon breached the novation. After that jury finding was announced, Standard successfully moved to amend its Complaint to conform to the jury's findings. The jury then awarded Standard $500,-000.00, consisting of both direct and consequential damages, and interest on the direct damages.

No. 901 Pittsburgh, 1983

Appeal of Standard Pipeline Coating Company

■ Standard first contends on appeal that the lower court committed error in finding that there is no cause of action in tort, arising from Solomon's alleged conduct of breaching its contract with Standard with the specific intent to drive Standard out of business. We find no Pennsylvania authority that permits a recovery in a tort action on the basis suggested by Standard, where the only alleged tortious act was a breach of contract. Standard concedes that Solomon's actions did not fall within the parameters of any established tort, but nevertheless, Standard suggests that our Court recognize such a new cause of action in tort. We decline to do so. We believe that existing tort and contract principles afford adequate remedies to address claims such as those asserted by Standard in this case. Because of that conclusion, and because we do not find convincing the

arguments offered by Standard in favor of a new tort, we will not create such a new cause of action in this case.[2] We find no error in the lower court's similar refusal to do so.

■ Our rejection of the request that we create a new ground for recovery in tort also resolves the second contention of error by Standard. Because there can be no recovery in tort, there can be no punitive damages. It has been held that punitive damages will not be assessed for a mere breach of contractual duties, where no recognized trespass cause of action, pleaded by the plaintiff, arose out of the same transaction. See *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.*, 287 Pa.Super. 74, 429 A.2d 726 (1981). Therefore, we can discern no error in the lower court's refusal to allow the jurors to consider a claim for punitive damages in the case.

■ With regard to Standard's final claim of error, we conclude that the trial court acted properly in refusing to mold the verdict to provide pre-judgment interest on the consequential damages. The Restatement (Second) of Contracts is instructive. In Section 354(2) it provides that prejudgment interest "may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."[3] Comment d to Section 354 recognizes that interest may be added to conse-

---

**2.** The new tort theory proposed by Standard is easily differentiated from the established cause of action for intentional interference with the performance of a contract. The latter occurs when one intentionally interferes with the performance of a contract (other than a marriage contract) between another and a third party by inducing or otherwise causing the third party not to perform the contract. Restatement (Second) of Torts, Section 766 [Although this Section has not been formally adopted in our Commonwealth, our courts have cited it with approval. See *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).] In the instant case, no third party was involved. .

**3.** For reasons enunciated in further discussions of this issue, which provide independent grounds for denying Standard's claim for interest on the consequential damages, we do not find it necessary to decide whether Restatement (Second) of Contracts Section 354 should be adopted into the law of our Commonwealth. However, it does provide some guidance which is worthy of consideration in this case.

quential damages, but states that because such damages are often difficult to estimate before the trial, the award of interest is to be left to judicial discretion in light of all the circumstances. We find nothing to indicate—nor has Standard argued—that the trial court abused its discretion by refusing to add interest to the consequential damages. Moreover, Standard has not presented any authority suggesting the propriety of such an interest award in Pennsylvania. In such circumstances we conclude that there was no error in the lower court's ruling denying the prejudgment interest sought by Standard on the consequential damages.

Therefore, we reject the arguments offered by Standard, and affirm the judgment of the lower court.

No. 865 Pittsburgh, 1983

Appeal of Solomon & Teslovich, Inc.

We next turn to the issues raised by Solomon in its appeal. First, Solomon contends that the trial court committed error when it permitted Standard to amend its Complaint to conform to the verdict. The trial judge allowed such an amendment to permit Standard to state a cause of action based upon a breach of an oral novation. Pa.R.C.P. 1033 allows amendments "at any time," and specifically permits amendments "to conform the pleading to the evidence offered or admitted." The right to amend should be granted liberally, unless the adverse party is prejudiced. *Arzinger v. Baughman*, 348 Pa. 84, 34 A.2d 64 (1943). Prejudice must be "... something more than a detriment to the other party, 'since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the position of the adverse party'." *Sands v. Forrest*, 290 Pa.Super. 48, 53, 434 A.2d 122, 125 (1981), quoting *Cellutron Products Corp. v. Stewart*, 223 Pa.Super. 391, 394, 300 A.2d 900, 901–02 (1972). In the instant case, Solomon was the party which first raised the issue of novation. In addition, Solomon, as well as Standard, produced testimony regarding a meeting of April 22, 1976, at which the purported oral novation

occurred. Solomon was therefore obviously not surprised that the existence of a novation would be at issue in the case, and was prepared to present, and in fact presented its proof in support of its position regarding that novation. Thus, it does not appear that Solomon could be held to have been prejudiced by the amendment in a manner which would make the allowance of the amendment reversible error in the case. Therefore, we reject Solomon's initial claim of error.

 Solomon also urges that the amendment permitted by the lower court should not have been permitted because of the bar of a statute of limitations. This defense was not raised during the course of the trial in response to the motion to amend, nor in Solomon's post-trial motions for new trial or judgment n.o.v. The first time it was mentioned was in Solomon's brief in support of such post-trial motions. In these circumstances, it must be held that the statute of limitations argument has not been properly preserved for appellate review. See *Turnway Corporation v. Soffer*, 461 Pa. 447, 336 A.2d 871 (1975); *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974). It should be noted that the statute of limitations does not divest the court of jurisdiction, but is only a procedural bar to recovery which may be waived by explicit consent or by conduct. *Bellotti v. Spaeder*, 433 Pa. 219, 249 A.2d 343 (1969).

 We next address the claim by Solomon that Standard failed to produce evidence of the breach of the novation and the resultant direct damages. We cannot agree. Both parties offered significant testimony about the meeting of April 22, 1976, the existence of a novation, and facts relating to the issue of direct damages. The jury gave greater weight to the testimony of Standard's witnesses. A verdict based on substantial, albeit conflicting evidence, is conclusive on appeal. It is not our role, as an appellate court, to pass upon the credibility of witnesses or to act as the trier of fact; we will not substitute our judgment for

that of the fact-finding jury. *Burbage v. Boiler Engineering and Supply Co., Inc.,* 433 Pa. 319, 249 A.2d 563 (1969).

 For similar reasons, we find no merit in the argument that the lower court erred in refusing to direct a verdict in Solomon's favor on the question of consequential damages. There was substantial evidence presented which indicated that Standard would have survived as an entity but for Solomon's breach of the novation. In that regard, we note that Mr. Shriver, the President of Standard, testified that he entered into the novation to try to ensure Standard's continued viability. Standard's lack of survival was clearly of great significance in the jury's award of consequential damages. Therefore, the lower court obviously acted correctly in declining Solomon's request for a directed verdict on the point.

 After careful review, we also reject Solomon's contention that the testimony of Standard's expert witness, Dr. Merril J. Foote, was grossly speculative, lacked any reasonable factual basis, and failed to establish consequential damages.[4] Dr. Foote testified regarding Standard's past financial condition, the operation and management of the business and the market for Standard's services. He also offered projections of future sales, which he then reduced to present value. Further, he discussed his calculation of the value of Standard. Based upon his qualifications and background, we cannot hold that Dr. Foote lacked the requisite expertise to offer opinions for the jury's consideration concerning these matters. Moreover, we do not find that his testimony could be regarded as highly speculative. It had a clear factual basis and adequately supported the jury's award of consequential damages. While it may be impossible to predict future business performance with total accuracy in a case such as this, an expert appraisal of probabilities is permissible testimony. The jury has discre-

4. Dr. Foote was identified as an economist, business consultant, teacher, researcher and a member of Standard's Board of Directors.

tion as to the weight such testimony is to be given. *Bialek v. Pittsburgh Brewing Company,* 430 Pa. 176, 242 A.2d 231 (1968). We must reject Solomon's arguments regarding Dr. Foote's testimony.

Finally, we review Solomon's contention that the trial court erred in charging the jury that a lesser degree of certainty was required in proving damages if it would be determined that Solomon willfully breached the novation. The court's charge in that regard was not inconsistent with the well-established principle that mere uncertainty as to the amount of damages will not bar a recovery where it is clear that damages were the certain result of the defendant's conduct. See *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897, (1979). As the jury was appropriately charged, damages do not have to be determined with mathematical precision, but only a reasonable degree of certainty. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). Solomon, in support of this argument, cites *Mellon Bank, N.A. v. Aetna Business Credit Inc.,* 500 F.Supp. 1312. (W.D.Pa.1980). However, we find that case to be inapposite for precedent here. Solomon relies upon a quotation from that case which includes the declaration that "... the motive for breaching the contract is not important...." *Id,* 500 F.Supp. at 1321. That quotation has been taken out of context. In that case the United States District Court was not dealing with an issue of the certainty of damages, but with a request for punitive damages in a breach of contract case. Properly read, that case is consistent with the law in Pennsylvania regarding punitive damages in a contract action, and harmonious with our disposition of Standard's punitive damage claim in the instant case. It provides no support for the argument offered by Solomon regarding the court's charge on the degree of certainty required for establishing damages. Thus, we reject Solomon's final claim of error.

The order of the lower court is affirmed.