536 A.2d 1357

**Judy BAKER, Appellee,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued May 12, 1987.

Filed Dec. 14, 1987.

Reargument Denied Feb. 8, 1988.

462

Stephen L. Dugas, Johnstown, for appellant.

James F. O'Malley, Johnstown, for appellee.

WIEAND, Judge:

In this action by Judy Baker to recover for a theft loss pursuant to the terms of a homeowner's policy issued by Pennsylvania National Mutual Casualty Insurance Company, the jury returned a verdict in favor of Baker in the amount of $11,913.97. A motion for post-trial relief, requesting the entry of a judgment n.o.v. or the granting of a new trial, was denied by the trial court, and judgment was entered on the verdict. On appeal, the insurance company contends that it is entitled to judgment n.o.v. because Baker's action was not commenced within one year of the loss as required by the terms of the policy. It also contends that the verdict was contrary to the weight of the evidence, which, according to appellant, depicted a false claim. Finally, it is argued, the trial court erred when it allowed evidence of the insurer's assets, reserves and claims handling procedures.

The claim arose initially because of the alleged theft of personal property from the home of Judy Baker, in Johnstown, Cambria County, between May 21, 1982 and May 24, 1982. Baker filed a claim with Pennsylvania National Mutual under and pursuant to a homeowner's policy which had been issued to her by the company. When six months passed without payment, Baker obtained counsel, who inquired of the insurer regarding the claim. He was advised that the investigation was continuing and that it would be necessary for Baker to submit to an oral examination under oath regarding the alleged loss. This examination took place on July 6, 1983. On February 15, 1984, the insurance company denied the claim. Baker commenced legal action on July 3, 1984. She subsequently filed an amended complaint which added separate counts seeking to recover compensatory damages for emotional distress and punitive damages because of the insurer's alleged bad faith in handling her claim. A preliminary objection in the nature of a demurrer was filed and denied, an answer was filed, and a jury, on October 29, 1985, returned a verdict which allowed only the claim for the stolen personal property.

■ The insurance policy which Baker purchased from Pennsylvania National contained the following provision:

8. Suit against us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one (1) year after the occurrence causing loss or damage.

"The law is clear that such a clause ... is valid and will be sustained." *General State Authority v. Planet Insurance Co.*, 464 Pa. 162, 165, 346 A.2d 265, 267 (1975) (citing numerous cases) (footnote omitted). "Likewise, axiomatic is the principle that a contractual limitation on the right to recovery under the terms of the policy may be waived by the acts of the insurer." *Commonwealth v. Transamerica Insurance Co.*, 462 Pa. 268, 273, 341 A.2d 74, 76 (1975). See: *General State Authority v. Planet Insurance Co.*, *supra* 464 Pa. at 165 n. 6, 346 A.2d at 267 n. 6; *McMeekin v. Prudential Insurance Co.*, 348 Pa. 568, 572–573, 36 A.2d

464

430, 432 (1944); *Arlotte v. National Liberty Insurance Co.,* 312 Pa. 442, 445, 167 A. 295, 296 (1933). Thus,

If in the course of the negotiations the company [gives the insured] reasonable grounds for believing that the time limit [will] be extended or that such provision [will] not be strictly enforced, it [can] not subsequently insist on its strict enforcement without giving [the insured] a reasonable time thereafter to bring [an] action. *Sudnick v. Home Friendly Insurance Company,* 149 Pa.Super. 145, 153, 27 A.2d 468 [ (1942) ]. " 'If it (the company) act[s] and promise[s], after the action [is] legally barred, as if it [does] not intend to insist on the limitation, and put the party to trouble, expense, and anxiety in regard to his claim, they need not complain of a jury finding that they did waive it. Under such circumstances, juries will be very likely to do so; and sometimes, probably, on pretty slight evidence.' There is a long line of cases which hold that the waiver need not be express. *It may be inferred from the acts of the insurers evidencing a recognition of liability,* or even from their denial of obligation exclusively for other reasons." *Bonnert v. Pennsylvania Insurance Company,* 129 Pa. 558, page 563, 18 A. 552, 15 Am.St.Rep. 739 [ (1889) ]. "Prima facie, the insured is entitled to have his loss made good immediately upon its happening, and when that loss appears to be an honest one, we are not disposed to scan very strictly the evidence which tends to rebut a technical forfeiture of the right to payment." *Pennsylvania Fire Insurance Company v. Dougherty,* 102 Pa. 568, 572.

*McMeekin v. Prudential Insurance Co., supra* 348 Pa. at 572–573, 36 A.2d at 432 (emphasis added). See: 19 P.L.E. *Insurance* § 421.

The issue of the timeliness of Baker's action is controlled by the decision of the Supreme Court in *Commonwealth v. Transamerica Insurance Co., supra.* There, the insured had issued a bond to the Commonwealth undertaking to indemnify the Commonwealth against any loss, up to a maximum of $10,000.00, caused by the failure of designated

Commonwealth employees to perform faithfully their duties and properly account for all monies and property received by them as a result of their positions. The bond contained a provision that any action under the bond had to be brought prior to the expiration of three years from the cancellation of the bond. The bond was cancelled on August 25, 1967. Prior thereto, an employee of the Commonwealth came under suspicion of embezzlement. The Commonwealth notified Transamerica of a potential claim on November 4, 1968, and Transamerica thereafter requested the results of the Commonwealth's on-going investigation. The Commonwealth promptly complied with the request. On August 28, 1969, after the employee had entered a plea of guilty to embezzlement, the Commonwealth submitted to Transamerica a proof of loss containing a claim for $48,094.11. Thereafter, the parties continued to cooperate with each other in providing information regarding the loss. After August 6, 1970, but prior to August 25, when the three year period was to expire, Transamerica decided to deny the Commonwealth's claim. However, its decision was not communicated to the Commonwealth until after the three year period had expired. The Commonwealth promptly filed suit thereafter. The trial court determined that the contractual time limit for commencing an action barred the Commonwealth's action and, therefore, entered summary judgment for the insurer. On appeal, the Supreme Court reversed, holding that because Transamerica's actions had given the Commonwealth reasonable grounds for believing that the time limit would not be strictly enforced, a waiver thereof had resulted. The Court explained:

> The portrayal of a bona fide investigation by [Transamerica] during the course of which it failed to suggest any grounds upon which it might deny liability, and the withholding of the decision to reject the claim, particularly where there was ample grounds to believe that if the parties were in fact acting in good faith liability would be eventually acknowledged, supply a basis for finding that the company by its actions had lulled the insured into neglecting the institution of suit within the required

time.... Although there was no expressed waiver of time limitation or a definitive acknowledgement of liability by the insured we are satisfied that this record presents a classic example where an insured could reasonably conclude from the course of the negotiations that if there was to be a denial of liability it would have been "exclusively for other reasons."

*Id.* 462 Pa. at 277–278, 341 A.2d at 78–79, quoting *McMeekin v. Prudential Insurance Co., supra.*

In the instant case, Baker's loss occurred no later than May 24, 1982. Upon discovering the theft, she immediately notified her insurance company of the loss. Pennsylvania National Mutual promptly had its adjuster, James Debiase, visit Baker's residence to investigate the claim. Debiase examined the premises, took photographs, and supplied Baker with the necessary claim forms. The forms were completed and filed with the company. In August, 1982, Debiase again visited Baker's home for the purpose of taking a statement from her. During this visit, Debiase informed Baker that a settlement check would be forthcoming. After hearing nothing further from the company for approximately four months, Baker contacted an attorney who wrote to Pennsylvania National inquiring about the status of Baker's claim. The company responded by stating that it wished to take a sworn statement from Baker. After some initial confusion, the statement was given in July of 1983. By then the one year within which to file suit had expired. Approximately one month later, Baker's attorney again wrote to Pennsylvania National inquiring about her claim. On October 31, 1983, Pennsylvania National responded by letter stating that more time was needed to evaluate the claim. On February 5, 1984, a letter denying the claim was sent to Baker. Suit was commenced on July 3, 1984.

This evidence was submitted to the jury to determine whether the insurer had waived the one year limitation. The jury found that the right to rely upon strict compliance had been waived and allowed recovery. We perceive no

basis for interfering with the jury's finding. The evidence showed that Debiase had conceded the company's liability and had advised Baker that a settlement check would be forthcoming. Although the company subsequently failed to issue the check and insisted upon taking Baker's oral statement under oath, at no time prior to February 15, 1984 did it indicate to Baker that it was retreating from its concession of liability. Rather, the negotiations proceeded on a friendly basis up to the time when the one year period expired; and during that time the only deviation from the admission of liability was the company's request for a sworn statement which it represented as necessary to complete its file. Even after the limitation period expired, Pennsylvania National continued to negotiate with Baker. Under these circumstances, the jury could readily conclude that the company had given Baker reasonable grounds for believing that the limitation on bringing suit would not be strictly enforced and had been waived. The trial court, therefore, did not err by refusing appellant's motion for judgment n.o.v.

■ Appellant argued at trial that Baker should be precluded from recovering under the policy because she had intentionally made false representations of material facts with regard to her claim.[1] The issue was submitted to the jury which concluded that Baker had not made false statements sufficient to bar recovery. Appellant contends that the verdict was contrary to the weight of the evidence.

[T]he decision to either grant or deny a motion for new trial [on grounds that the verdict was against the weight of the evidence] is within the sound discretion of the trial court and will be reversed on appeal only if the appellate court determines the trial court palpably abused its discretion.... Our Supreme Court has held that a new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice. *Burrell*

---

**1.** The policy contained a provision which stated: "We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."

*v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516 (1970). A new trial should not be granted where the evidence is conflicting and the jury might have found for either party, nor where the trial judge would have reached a different conclusion on the same facts.

*Hawthorne v. Dravo Corp.*, 352 Pa.Super. 359, 365, 508 A.2d 298, 301 (1986), quoting *Myers v. Gold*, 277 Pa.Super. 66, 69, 419 A.2d 663, 664 (1980). See: *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969); *Brown v. McLean Trucking Co.*, 434 Pa. 427, 256 A.2d 606 (1969); *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A.2d 505 (1951); *Buck v. Scott Township*, 325 Pa.Super. 148, 472 A.2d 691 (1984); *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 454 A.2d 46 (1982); *Eldridge v. Melcher*, 226 Pa.Super. 381, 313 A.2d 750 (1973).

Appellant contends that Baker made false representations by (1) claiming that various items had been stolen from her home when in fact she had informed the police that they had been stolen from her mother's home, which had also been burglarized; and (2) stating that she had never before made an insurance claim for a theft loss when, at trial, she conceded that she had made such a claim while living in Texas. A review of the record reveals that the inconsistencies were explained and the explanation, if believed, would excuse the inconsistencies.

Baker testified that shortly after discovering the theft, she gave the police two lists: one containing items which had been stolen from her home and the other containing items stolen from her mother's house. Although some items appeared to be present on both lists, Baker explained that these were duplicate items which had been stolen from both homes. Moreover, Baker stated unequivocally, the only items which she had listed in her claim to Pennsylvania National were those which had been stolen from her own home. Despite Pennsylvania National's arguments to the contrary, we find no evidence of record which would require the jury to reject Baker's explanation.

Baker also testified that she had answered Pennsylvania National's question concerning prior theft losses in the

negative because she believed that the question referred only to claims for theft losses made under the policy which she had purchased from Pennsylvania National. Baker explained that the only other theft claim which she had made occurred many years before and concerned property in Texas which she had previously owned and which had been insured by a different insurer. Contrary to appellant's contention, Baker's testimony was not so contradictory as to be unworthy of belief. Rather, our reading of the record indicates that Baker's testimony was consistent, and if believed by the jury, was sufficient to refute any contention that she had intentionally made false misrepresentations with regard to her claim under the policy. Moreover, the representation regarding other claims, even if false, was not material to the theft loss claim which Baker made to Pennsylvania National.

Appellant also contends that the trial court erred in its jury instructions regarding (1) the insurer's waiver of the provision in the policy which limited the time period for commencing suit thereunder; and (2) the effect of any alleged intentional misrepresentations on Baker's ability to recover under the policy. " '[W]hen the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies.' " *Wilkerson v. Allied Van Lines, Inc.*, 360 Pa.Super. 523, 536, 521 A.2d 25, 32 (1987), quoting *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). We have reviewed the trial court's instructions in the instant case and conclude that they were adequate.

■ We are constrained to agree, however, that serious error was committed when, under the guise of relevance to establish a claim for punitive damages, Baker offered and the trial court allowed evidence of the insurance company's assets, reserves and claim procedures. The law is clear that punitive damages cannot be recovered merely for

breach of contract. See: *Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.*, 344 Pa.Super. 367, 496 A.2d 840 (1985); *Rittenhouse Regency Affiliates v. Passen*, 333 Pa.Super. 613, 482 A.2d 1042 (1984); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928 (1984); *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.*, 287 Pa.Super. 74, 429 A.2d 726 (1981); *DeLuca v. Fidelity Bank*, 282 Pa.Super. 365, 422 A.2d 1159 (1980). When the trial court refused to dismiss the insured's claim for punitive damages pre-trial and thereafter allowed evidence at trial of the insurance company's net worth, the amount of its reserves, and the procedures which it followed in settling claims, the trial court committed serious error.

The trial court concedes that there could be no recovery for punitive damages, but suggests that its error in allowing the claim to go to the jury was harmless because the jury rejected Baker's claim for punitive damages. This analysis, which appellee pursues in this court, is unacceptable. Because the trial court erroneously refused summarily to disallow the claim for punitive damages, as it should have done, the jury was permitted to hear evidence that the appellant company had a net worth of more than ninety-two million dollars in 1982 and that its net income during the same year had exceeded fifteen million dollars.

This evidence, although relevant in a proper claim for punitive damages, is not relevant to and, indeed, is highly prejudicial and improper in a claim for compensatory damages. See: *Feld v. Merriam*, 506 Pa. 383, 396, 485 A.2d 742, 748 (1984); *Trimble v. Merloe*, 413 Pa. 408, 410, 197 A.2d 457, 458 (1964). The reason for the rule is readily apparent. Evidence of a defendant's considerable wealth tends to prejudice the jury against the defendant who, it is presumed, can afford to compensate the plaintiff for his or her alleged losses. Thus, a jury will be inclined to award compensatory damages based not upon the evidence and the law, but upon the defendant's ability to pay. Because of the prejudicial impact associated therewith, the improper

receipt of this evidence requires that a compensatory damage award be set aside and a new trial awarded. See: *Feld v. Merriam, supra.* See also: *Arye v. Dickstein,* 337 Pa. 471, 474, 12 A.2d 19, 20 (1940) (even where evidence concerning defendant's wealth is properly received in a valid action for punitive damages, its admission "should be most carefully safeguarded by the judge, so that injustice shall not be done to the defendant"); *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 385–386, 492 A.2d 1382, 1388 (1985) (same).

In the instant case, the trial court erred in permitting evidence of Pennsylvania National's net worth to be presented to the jury. The court also failed after this evidence had been improperly received, to give any cautionary instructions telling the jury that it should not look to the insurance company's wealth in fixing the amount of compensatory damages. Under these circumstances, the prejudicial effect of the evidence cannot be ignored. It may well have impacted on the jury's decision to allow the claim and in fixing the amount of the alleged loss. See: *Feld v. Merriam, supra* 506 Pa. at 397, 485 A.2d at 748.

■ The trial court also was incorrect when it submitted to the jury the plaintiff-appellee's claim for emotional distress allegedly caused by the insurer's denial of her claim. The law in this Commonwealth does not recognize a claim for emotional distress because of an insurer's erroneous denial of a claim for insurance benefits. In *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981), plaintiff made a claim for property damage under a contract of insurance which he had purchased from the defendant insurance company. After the claim had been denied, plaintiff filed a complaint against the defendant seeking to recover the costs of repairing the damage to his property and also damages for emotional distress and punitive damages based upon defendant's alleged bad faith conduct in denying plaintiff's claim. Defendant's preliminary objections to plaintiff's claim for emotional distress and punitive damages were

granted and plaintiff appealed. The Superior Court affirmed by an evenly divided court. The Supreme Court granted allocatur and reversed. The Court observed that the Legislature had enacted the Unfair Insurance Practices Act, P.L. 589, 40 P.S. § 1171.1 et seq., in an effort to curb bad faith conduct by insurance carriers and had empowered the Insurance Commissioner to enforce the provisions of the Act. The Court held:

> There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action.... Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.

> Our conclusion that the Unfair Insurance Practices Act serves adequately to deter bad faith conduct applies not only to appellant's attempt to recover punitive damages but also to his attempt to recover damages for "emotional distress." An award of punitive damages unquestionably is a deterrent device, see Restatement (Second) of Torts § 908 (1965); Restatement (Second) of Contracts § 369 (Tent.Draft No. 14, March 1, 1979), one which is unnecessary in view of the present legislatively-created regulatory scheme. And in the vast majority of cases an award of emotional distress damages would accomplish no more than is already accomplished by the Unfair Insurance Practices Act.

Id., 494 Pa. at 507–508, 431 A.2d at 970 (footnote omitted). See also: *Rodgers v. Nationwide Mutual Insurance Co.*, 344 Pa.Super. 311, 496 A.2d 811 (1985).

Although the trial court erred in denying appellant's pre-trial preliminary objections to the count requesting damages for emotional distress, the evidence in support of this alleged cause of action did not patently prejudice appellant's

defense to Baker's underlying claim for a theft loss. On the present state of the record, therefore, and in view of the jury's rejection of the claim for emotional distress, the trial court's submission of the claim to the jury must be deemed harmless. Upon a retrial, however, the claim for emotional distress should not be submitted to the jury, and evidence in support thereof should not be allowed.[2]

Reversed and remanded for a new trial. Jurisdiction is not retained.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I respectfully dissent. Though I am inclined to agree with much of the reasoning in the majority's opinion, I am unable to agree with its conclusion that the admission at trial of evidence concerning the net worth of appellant insurance company prejudiced appellant and tainted the jury verdict which awarded appellee compensatory damages in the amount of $11,913.97.[*]

I agree with the majority opinion that the trial court did not err by refusing appellant's motion for judgment n.o.v., where reasonable grounds existed to believe that the one year limitation period set forth in the policy, within which appellee was required to bring suit, had been waived by appellant. I further assent to the determination that the issue of whether appellee had intentionally made false representations of material facts with regard to her claim was properly submitted to the jury. Likewise, I agree with the

---

**2.** The amended complaint also alleged a cause of action that Baker had been defamed by statements which Pennsylvania National had made in its letter denying her claim and in its answer to her original complaint. The trial court also denied Pennsylvania National's preliminary objections to this cause of action. However, the cause of action was abandoned at trial when Baker failed to pursue it. Therefore, we express no opinion regarding the privileged nature of the averments of fact contained in appellant's amended answer or in its letter denying appellee's claim.

\* This verdict was subsequently molded by the court to include interest in the amount of six percent (6%) per annum calculated from the date of loss.

majority that no prejudice came to appellant insurance company regarding an alleged error in jury instructions, nor, in the trial court's error in denying appellant's pre-trial preliminary objections requesting damages for emotional distress. In addition, I agree with the majority that punitive damages will not be assessed for a mere breach of contractual duties. *Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367, 496 A.2d 840 (1985); *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.,* 287 Pa.Super. 74, 429 A.2d 726 (1981). Moreover, I agree that, based on the facts of this case, it was correct to hold that a claim for punitive damages was improper, and that the admission of evidence of appellant's net worth was, accordingly, error. However, in reversing and remanding for a new trial, the majority, citing *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984), concludes that the evidence of appellant's net worth submitted in this case, though proper evidence in a claim for punitive damages, was not only improper, but highly prejudicial in that it may have affected the jury's deliberation on appellee's claim for compensatory damages. As to this conclusion, I respectfully dissent.

In *Feld, supra,* evidence was presented at trial to show that defendant/appellant maintained a net worth of forty million dollars. In that case, a claim for compensatory damages was asserted based on an alleged breach of duty by a landlord of protection owed to tenants which resulted in injuries to the parties. The jury returned a compensatory damage award for appellees of three million dollars. The Supreme Court of this Commonwealth stated in *Feld, supra,* that, "[a] jury may not consider a defendant's wealth in setting compensatory damages. It is improper, irrelevant, prejudicial, and clearly beyond the legally established boundaries." (Citation omitted). 485 A.2d at 748.

Here, however, the injury alleged is tangible and the damages verifiable. The instant case deals not in compensation for an abstract injury as in *Feld,* but compensation for property lost in a theft for which a sum certain value

has been determined. Appellee in this case was not awarded compensatory damages in the millions of dollars, but was awarded $11,913.97, precisely the amount determined to be the value of the property lost in the theft and the amount of the claim submitted to appellant.

I am unable to find, as did the majority, based on the compensatory damages awarded appellee, that the error in admitting evidence of appellant's net worth resulted in prejudice to the appellant and a tainted verdict. Whatever error that occurred was harmless error. Therefore, I dissent.