J-A26020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDWARD H. JANUSEY AND DEBORAH H. JANUSEY, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 208 WDA 2019 |
| DEAN M. GROSE AND VALERIE J. GROSE, HIS WIFE | : | |
| | : | |

Appeal from the Order Entered January 9, 2019
In the Court of Common Pleas of Washington County Civil Division at
No(s):  No. 2014-1048

| | | |
|---|---|---|
| EDWARD H. JANUSEY AND DEBORAH H. JANUSEY, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEAN M. GROSE AND VALERIE J. GROSE, HIS WIFE | : | No. 286 WDA 2019 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered January 9, 2019
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2014-1048

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 26, 2019**

Edward H. Janusey and Deborah H. Janusey (h/w) (the Januseys/Sellers/Plaintiffs) appeal and Dean M. Grose and Valerie J. Grose (h/w) (the Groses/Buyers/Defendants) cross-appeal from the trial court's order denying the Groses' motion for reconsideration of the order striking the

jury's punitive damages award and denying the Januseys' motion contesting an award of attorney's fees and costs in favor of the Groses. After careful review, we affirm.

On May 13, 2013, the Groses entered into two agreements of sale with the Januseys for the purchase of property located in Washington County. The total sale price for the property was $4,999,999. The first agreement indicated that the property would be subdivided into two lots (Lot 1 and Lot 2). Lot 1 consisted of an 18.15 acre parcel with a large residence; the purchase price for Lot 1 was $3,300,000. Lot 2 consisted of 79.75 acres of land; the purchase price for Lot 2 was $1,699,999. In two separate deeds, each dated June 21, 2013, the Januseys conveyed the two lots to the Groses; each lot had its own tax identification number.

The purchase of both Lots occurred simultaneously; however, the Groses financed the purchase of Lot 2 as a purchase money mortgage with payment of the Note on Lot 2 due in full on or before December 31, 2013. At closing, the Groses signed a Term Note outlining the terms of the sale for Lot 2. The oil and gas under both lots were assigned by the Januseys to the Groses as part of the Lot 2 transaction.[1]

The Groses moved into the home on Lot 1 in early fall 2013 and performed minor renovations. In December 2013, a water pipe in the

---

[1] Separate documents were executed for the Lots and the oil and gas conveyance. On December 18, 2013, the Groses executed an oil and gas lease with a third party for the rights on both Lots.

residence froze on two different occasions. On January 7, 2014, a water pipe burst in the residence causing water to flood the kitchen area. The Groses hired a specialist to remediate the water damage to the home. As a result of the burst pipe, the Groses withheld their payment on Lot 2 and demanded that the Januseys correct the house's heating and plumbing systems.[2] The Januseys declined to fix the problem and demanded payment on Lot 2. When the Groses continued to withhold payment, the Januseys filed an assumpsit action on February 26, 2014, seeking payment of the principal amount of Lot 2, with interest[3] and reasonable out-of-pocket expenses. The Groses filed an answer, new matter, and counterclaims alleging breach of contract, fraudulent

_____

[2] In the Seller Disclosure Statement executed by the Januseys, they indicated that they were not aware of "any water leakage, accumulation or dampness within the basement, garage or crawl space, any past or present water leakage in the house or other structure, any water . . . damage to the property, any leaks or other problems, past or present, related to the water supply, pumping system, well and related items, any problems with any of [the] plumbing fixtures, any problems with any water heater or related equipment, and any problems or repairs needed regarding [the heating system]." West Penn Multi-List, Inc. Seller Disclosure Statement, 4/8/13, at ¶¶ 4(e), 6(a), 6(h), 8(h), 10(b), 11(b), and 13(h).

[3] The parties' agreement for Lot 2 includes the following language:

> If any amount of principal due under this Note or otherwise is not paid by [the Groses] when due, whether at the stated maturity of this Note, by acceleration, or otherwise, such amount shall bear interest until paid at a rate per annum which is 10 percent (10%). *Such sums shall be immediately due and payable without demand or notice by [the Januseys].*

Term Note, 6/21/13, at 1 (emphasis added).

and negligent misrepresentation, and violations of Pennsylvania's Real Estate Seller Disclosure Law (RESDL)[4] and the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[5]  Specifically, the Groses claimed that the Januseys failed to disclose a material defect in the home, namely that certain pipes and utilities were located in under-heated and under-insulated eaves of the roof of the home that exposed the heating and plumbing equipment to the elements and put the equipment at risk for freezing and bursting when the outside temperature fell below freezing.[6]  Groses' Answer, New Matter and Counterclaim, 3/25/14, at ¶ 6.

The Januseys filed a motion for judgment on the pleadings in June 2014; the court denied the motion in January 2015.  In July 2016, the Januseys filed a motion for summary judgment claiming that the Lot sales were completely separate and distinct transactions; the court denied the motion on July 19, 2016.  On April 7, 2017, the Januseys filed motions *in limine* and a second motion for summary judgment.  The Januseys' motions *in limine* sought, in part, to exclude the proposed testimony and expert report of David J. Bizzak,

_____

[4] 68 Pa.C.S. §§ 7301-7315.

[5] 73 P.S. §§ 201-1-201-9.3.

[6] The initial residence, built by Mr. Jansuey's company, was designed and constructed to include a utility chase that ran through the residence.  The original residence, however burned to the ground by an act of arson in May 2001.  The construction of a second home, the one purchased by the Groses, did not include a utility chase.

a professional engineer, who opined that a material defect[7] existed in the residence as a result of improperly placed water supply pipes. The Januseys argued that without that evidence, the Groses could not prove the existence of a material defect under RESDL to justify withholding payment for Lot 2. On May 10, 2017, the trial court denied the motions in limine, and, concomitantly, the summary judgment motion.

The case proceed to a jury trial, after which the jury found in favor of the Groses, concluding that they were entitled to rescission of the entire transaction[8] (Lot 1 and Lot 2), punitive damages (for all legal fees) due to the Januseys' fraudulent representations, and $4,952.69 in costs and expenses related to the sale of the property. The jury made the following findings of fact: (1) the sale of Lot 2 was not a separate transaction from the sale of Lot 1; (2) the Groses were not justified in withholding payment for Lot 2; (3) the Januseys violated the RESDL and UTPCPL; (4) the Januseys breached the agreements of sale; and (5) the Januseys made fraudulent and negligent misrepresentations to the Groses. Verdict and Interrogatories to the Jury, 9/22/17, at 1-3. The Januseys filed post-trial motions and the Groses filed a motion for treble damages, attorney's fees and expenses for costs related to

---

[7] The agreement for Lot 1, which included the residence, provided that the "Sellers have no knowledge, nor have they received any notice, of any material defect in any of the Property." Agreement of Sale (Lot I), 5/13/13, at ¶ 5(d).

[8] This not only included returning the property to the Januseys, but also all of the money that the Groses received from the gas lease.

the transaction. The court granted the Groses' motion in part, awarding them $114,848.88 in attorney's fees and transaction expenses, and $308,976.02 for attorney's fees and litigation expenses under the UTPCPL, and denied it in part, declining to award the Groses treble damages. The court denied the Januseys' post-trial motion. The parties filed a timely appeal and cross-appeal, as well as court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.

On appeal, the Januseys present the following issues for our consideration:

(1)    Did the trial court abuse its discretion by failing to grant summary judgment, or decide as a matter of law, that the sale of the 80-acre, unimproved Lot 2 was a separate transaction from the sale of the residential Lot 1?

(2)    Did the trial court abuse its discretion by permitting the [Groses] to pursue rescission and breach of contract claims simultaneously at trial?

Appellants' Brief, at 4. On cross-appeal, the Groses raise the following claims:

(1)    Did the [trial] court err in striking the jury's award of punitive damages to the Groses for the Januseys' fraudulent misrepresentation?

(2)    Did the [trial] court err in failing to award treble damages under the UTPCPL, 73 Pa.C.S. §§ 201-1[,] *et seq*.?

Cross-Appellants' Brief, at 5.

The Januseys claim that the trial court erred in denying their motion for summary judgment, arguing that the sale of Lot 2 was a separate transaction from the sale of Lot 1. Assuming the two transactions were separate, the Januseys contend that the agreement for Lot 2 is unaffected by the agreement

for Lot 1 and that an alleged material defect in the house (Lot 1) is irrelevant to their action in assumpsit on the term note for Lot 2.

> The standard of review for motions for summary judgment is well[-]settled. Pursuant to Pa.R.C.P. 1035.2(2), a trial court shall enter judgment if, after the completion of discovery, an adverse party who will bear the burden of proof at trial fails to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury. Summary judgment is properly granted when the record contains insufficient evidence of facts to make out a *prima facie* cause of action or defense, and, therefore, there is no issue to be submitted to a jury. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The party with the burden of proof on an issue may not rely merely on the allegations in its pleadings, but rather must produce evidence of facts demonstrating a genuine issue for trial.

**Phillips v. Selig**, 959 A.2d 420, 427 (Pa. Super. 2008) (citations and headnotes omitted). "An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. Notwithstanding, the scope of review is plenary and the appellate court shall apply the same standard for summary judgment as the trial court." *Id.* at 428 (citations omitted).

In its memorandum order denying the Januseys' summary judgment motion, the trial judge, the Honorable Katherine B. Emery, found that the court was bound by the coordinate jurisdiction rule where a prior trial court judge, the Honorable Debbie O'Dell Seneca, had denied the Januseys' motion

for judgment on the pleadings based on the same legal argument that the sale of the lots consisted of two separate transactions. Judge Emery concluded that although additional evidence existed now, in the form of Dean Grose's deposition testimony, this information did not "contain[ any] new information material to the case." Memorandum Order, 7/19/16.

Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995); *see also Riccio v. American Republic Insurance Co.*, 705 A.2d 422, 425 (Pa. 1997). More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions. *Id.*; *Okkerse v. Howe*, 556 A.2d 827, 831 (Pa. 1989). Some exceptions to the general rule, however, exist such as when there has been a substantial change in the facts or evidence or where "the prior holding was clearly erroneous and would create a manifest injustice if followed." *Starr*, 664 A.2d at 1332. In *Goldey v. Trustees of University of Pennsylvania*, 675 A.2d 264 (Pa. 1996), our Supreme Court also noted that

> [w]here motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in facts or the law clearly warrant a new look at the question.

*Id.* at 267 (emphasis in original).

Here, the motions, which raised identical issues and were based on virtually the exact same evidence, were not "of the same kind" as referenced in *Goldey*. Moreover, in this case where Judge O'Dell Seneca denied the Januseys' motion for judgment on the pleadings by a single order and without any accompanying opinion or legal explanation, we are hesitant to simply rely upon Judge Emery's blanket statement that she cannot reconsider the decision based upon the coordinate jurisdiction rule.

However, after reviewing the record, we find that the court properly denied summary judgment.[9] First, the question of the interpretation of a contract is often a jury question. *Kripp v. Kripp*, 849 A.2d 1159, 1164 (Pa. 2004) (under Pennsylvania law, interpretation of contract is matter for fact finder when contract is ambiguous). Here, the Januseys contend that the Groses defaulted on the Term Note, where the Term Note and the Agreement for Lot 2 was a separate transaction from the Agreement for Lot 1. The Groses, on the other hand, contend that the Lot 1 and Lot 2 Agreements represented a single transaction and that because the Januseys concealed a defect in the house that caused the Groses harm, they were justified in withholding payment due on Lot 2.

---

[9] We are not limited by the trial court's rationale and may affirm its decision on any basis. *Blumenstock v. Gibson*, 811 A.2d 1029, 1033 (Pa. Super. 2002).

- 9 -

Because the agreements, on their faces, do not clarify the issue, they are considered ambiguous. **Hutchinson v. Sunbeam Coal Corp.**, 519 A.2d 385, 390 (Pa. 1986) (contract is ambiguous if reasonably susceptible to different constructions and capable of being understood in more than one sense). As a result, in order to understand the circumstances under which the contract was made, the fact finder had to examine the intent of the parties. Thus, where the case involved a material question of fact which needed to be resolved by the jury, summary judgment was properly denied. **Windows v. Erie Ins. Exch.**, 161 A.3d 953 (Pa. Super. 2017), citing **Metzger v. Clifford Realty Corp.**, 476 A.2d 1 (Pa. Super. 1984).

In their next issue on appeal, the Januseys claim the trial court abused its discretion when it permitted the Groses to pursue rescission and breach of contract claims simultaneously at trial.

We first note that our Court has held that a party is permitted to plead and pursue alternative and inconsistent claims seeking remedies of damages for breach of contract and for rescission of a lease. **Scheartz v. Rockey**, 932 A.2d 885 (Pa. 2007). Moreover, here the underlying agreements of sale provided for rescission as a contractual remedy, and not an equitable remedy. Thus, we find no merit to this issue.

On cross-appeal, the Groses claim that the trial court improperly struck the award of punitive damages after the jury determined that the Januseys committed fraudulent misrepresentation.

Here, the jury determined that the Groses were entitled to punitive damages for "ALL legal fees." **See** Verdict and Interrogatories to the Jury, 9/22/17, at 3 (emphasis in original). In the brief supporting their motion for attorney's fees, costs and treble damages, the Groses sought "an award of all their transaction costs associated with the agreement to purchase the Residence, *totaling $114,848.58, per the jury's punitive damages award*." Groses' Brief in Support of Motion for Award of Treble Damages, Attorneys' Fees and Costs, 10/2/17, at 2 (emphasis added). The Groses also argued in their motion that the court should "mold the final judgment entered in th[e] case to conform to the verdict rendered by including all of the Groses' attorneys' fees and costs expended to enter the transaction and litigate this case." **Id.** at 4; **see also id.** (Argument III, Section A. of Groses' motion titled "All of the Groses' Attorney's Fees and Costs were Awarded by the Jury as Punitive Damages.")

Instantly, the court did exactly what the Groses asked for – it awarded them reasonable attorneys' fees and costs under the UTPCPL, as well as all of their transaction costs associated with the purchase agreement. The court's total award was broken down as follows: *$114,848.58 in attorneys' fees and expenses associated with entering into the transaction* and $308,967.02 in attorneys' fees, costs and expert fees under the UTPCPL.[10] **See** Trial Court

_____

[10] **See** 73 Pa.C.S.A. § 201-9.2(a).

Pa.R.A.P. 1925(a) Opinion, 6/3/19, at 1-2 (emphasis added).  Because the court awarded the Groses the exact amount of damages they sought, we find this claim meritless.[11]

In their final claim on cross-appeal, the Groses assert that they were entitled to treble damages under the UTPCPL where the Januseys committed fraudulent misrepresentation.

Under the UTPCPL, "[t]he court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.  The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees."  73 Pa.C.S.A. § 201-9.2(a).  In **Johnson v. Hyundai Motor Am.**, 698 A.2d 631 (Pa. Super. 1997), our Court stated:

> It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature.  The law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based upon breach of contract. **Thorsen v. Iron and Glass Bank**, [] 476 A.2d 928, 932 ([Pa. Super.] 1984).  **See Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.**, [] 496 A.2d 840, 844 ([Pa. Super.] 1985) (holding "punitive damages will not be assessed for mere breach of contractual duties, where no recognized trespass cause of action . . . arose out of the same transaction[.]").  Whereas in contract actions, damages are awarded to compensate an injured party for the loss suffered due to the breach, **Empire Properties, Inc. v. Equireal Inc.**, [] 674 A.2d 297, 304 ([Pa. Super.] 1996),

---

[11] The Groses admit that this claim is moot to the extent that the Januseys do not argue the issue of attorneys' fees under the UTPCPL or as punitive damages on appeal.  **See** Cross-Appellants' Brief, at 3.

the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function. ***Schecter v. Watkins***, [] 577 A.2d 585, 595 ([Pa. Super.] 1990). Therefore, under the law of this Commonwealth, a court may award punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. ***SHV Coal, Inc. v. Continental Grain Co.***, [] 587 A.2d 702, 704 ([Pa.] 1991); ***Rizzo v. Haines***, [] 555 A.2d 58 ([Pa.] 1989). It is precisely these well-grounded principles of law that we expect the trial courts will follow when, as in the instant case, exercising discretion and awarding treble damages for breach of contract/warranty under the UTPCPL.

*Id.* at 639-40.

In ***Schwartz v. Rockey***, 932 A.2d 885, 898 (Pa. 2007), the Court concluded that "as a matter of statutory construction, [] the court's discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages." *Id.* at 898. The ***Schwartz*** Court went on to state that "awards of treble damages may be reviewed by appellate courts for rationality [and, c]entrally, courts of original jurisdiction should focus on the presence of *intentional or reckless, wrongful conduct*, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Id.* (emphasis added).

Here, the jury found that the Januseys made fraudulent and negligent misrepresentations to the Groses in the underlying property transfer. While the court declined to treble the damages in the case, it awarded attorneys' fees in excess of $400,000. Under such circumstances, we conclude that the trial court's order denying treble damages was grounded in rationality where

there was no specific finding that the Januseys' conduct rose to the level of egregious conduct warranting treble damages under the UTPCPL, and where the Groses were otherwise adequately compensated for their fees and expenses incurred in defending the lawsuit. *Schwartz*, *supra*. Accordingly, we find no abuse of discretion. *Johnson*, *supra*.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/26/2019