## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,             :
            Appellant      :
            :
        v.            :    No. 1782 C.D. 2019
            :    Submitted: August 21, 2020
John E. Wetzel, Shirley Moore Smeal,   :
Daniel Burns, Jeffrey Witherite,      :
Gerald Rozum, Daniel Gehlmann,     :
Joseph Mazurkiewicz, Allen Joseph,    :
Melissa Hainsworth and Joseph      :
Bianconi                          :


**BEFORE:**   **HONORABLE P. KEVIN BROBSON, Judge**[1]
                **HONORABLE ANNE E. COVEY, Judge**
                **HONORABLE J. ANDREW CROMPTON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                     **FILED: December 23, 2021**

Appellant Rasheed Nifas (Nifas) appeals, *pro se*, from an order of the Court of Common Pleas of Somerset County (trial court), dated December 16, 2019, which denied his motion for post-trial relief (Post-Trial Motion). For the reasons that follow, we reverse, in part, and affirm, in part.

## I. BACKGROUND

In June 2014, Nifas, an inmate who is currently serving a life sentence at the State Correctional Institution at Coal Township (SCI-Coal Township), initiated this action under 42 U.S.C. § 1983, relating to violations of civil rights, against the

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

Secretary of Corrections, John E. Wetzel (Secretary Wetzel), the Executive Deputy Secretary of the Department of Corrections (Department), Shirley Moore Smeal (EDS Moore Smeal), the Superintendent at the State Correctional Institution at Somerset (SCI-Somerset), Gerald Rozum (Superintendent Rozum), and seven other employees or former employees of the Department (collectively, Prison Officials) by filing a complaint. In the complaint, Nifas sought a declaratory judgment and damages for retaliation under the First Amendment to the United States Constitution.[2] (Original Record (O.R.), Item No. 3, Complaint (Compl.) ¶¶ 5-15, 34, *Demand for Relief*.) In support thereof, Nifas alleged that he filed a grievance against Prison Officials for imposing a requirement on his removal from the Department's Restricted Release List (RRL) that he work without compensation for several months in the Restricted Housing Unit (RHU) at SCI-Somerset where he was then housed (step-down plan). (*Id.* ¶¶ 26, 28, 34.) Nifas further alleged that Prison Officials unlawfully retaliated against him for filing the grievance by reversing their decision to remove him from the RRL and continuing to house him within the RHU. (*Id.* ¶ 34.)

Prison Officials filed an answer to Nifas's complaint, asserting that there was a legitimate penological interest for requiring Nifas to complete the step-down plan; specifically, the step-down plan was an assessment tool to determine whether Nifas could successfully reintegrate into the prison's general population and adjust

---

[2] To prove a successful prison retaliation claim, Nifas must establish, by a preponderance of the evidence, that: "(1) he engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal." *Richardson v. Wetzel*, 74 A.3d 353, 357 (Pa. Cmwlth. 2013).

positively to prison life outside the RHU.[3]  (O.R., Item No. 43, Prison Officials' Answer to Nifas's Complaint with New Matter ¶¶ 46-48.)  Prison Officials further asserted that Nifas remained on the RRL due to his unwillingness to participate in the step-down plan and not because he filed the grievance.  (*Id.* ¶¶ 54, 59.)

In February 2019, following a period of discovery and the trial court's denial of Prison Officials' motion for summary judgment, the trial court held a pretrial conference.  At that time, Prison Officials' attorneys requested that both Secretary Wetzel's and EDS Moore Smeal's trial testimony be taken through depositions.  (O.R., Item No. 141, Pretrial Conference Transcript at 32.)  Nifas objected to Prison Officials' attorneys' request, because he wanted Secretary Wetzel and EDS Moore Smeal to testify live so that the jury could observe their demeanor.  (*Id.* at 33-34.)  In response, Prison Officials' attorneys suggested that the depositions be videotaped.  (*Id.* at 36-37.)  The trial court explained to Nifas that he would have the same rights and privileges as if Secretary Wetzel and EDS Moore Smeal testified live at trial.  (*Id.* at 38.)  When Nifas inquired whether the videotape would be played for the jury without editing, the trial court assured Nifas that any decisions on the objections raised during the videotaped depositions would be ruled upon prior to trial and that the videotape would be edited to delete matters that the trial court ruled inadmissible.  (*Id.* at 40-41.)  Following this discussion, the trial court granted Prison Officials'

---

[3] Initially, Prison Officials filed, *inter alia*, a preliminary objection to Nifas's complaint in the nature of a demurrer, asserting that the complaint failed to state a legally cognizable claim for retaliation.  (O.R., Item No. 7, Prison Officials' Preliminary Objections to Nifas's Complaint.)  In October 2014, the trial court issued a memorandum and order sustaining Prison Officials' preliminary objection and dismissing Nifas's complaint.  (O.R., Item No. 24, Order of the Court dated October 30, 2014.)  Nifas appealed the trial court's order to this Court.  By opinion and order dated February 16, 2016, this Court reversed the trial court's order and remanded the matter to the trial court for Prison Officials to file an answer to Nifas's complaint.  *Nifas v. Wetzel* (Pa. Cmwlth., No. 1024 C.D. 2015, filed February 16, 2016).

attorneys' request that Secretary Wetzel's and EDS Moore Smeal's trial testimony could be conducted by video deposition.  (*Id*. at 44-45, 50.)

On March 12, 2019, the parties took Secretary Wetzel's and EDS Moore Smeal's trial testimony by videotaped deposition.[4]  (O.R., Item No. 247, Jury Trial Transcript, September 11, 2019, at 3.449-.573.)   During EDS Moore Smeal's deposition, Nifas asked EDS Moore Smeal several questions regarding "slavery," "slaves," and "slave labor:"  (1) "Do you believe in slavery?"; (2) "Would you have a slave?"; and (3) "[Prison Officials] chose it upon themselves to have [Nifas] do this slave labor for free; is this correct?"  (*Id*. at 3.542, 3.548.)  Nifas also made a statement on the record about "being a modern-day slave working for free." (*Id*. at 3.550.)  Nifas then referenced a total of 45 misconducts that he had incurred since the time that he first entered the Department's custody and that led to his confinement in the RHU and placement on the RRL.  Significantly, in asking a question to EDS Moore Smeal, Nifas read from a report of his misconducts that provided:  "Prior notable misconducts include assault, five counts; threatening an employee, nine counts; threatening or harassing or interfering with the Department [canine] in fighting, six counts."  (*See id*. at 3.553-.558.)

On the same day as EDS Moore Smeal's trial deposition, Prison Officials filed a motion in limine (Prison Officials' Motion in Limine), seeking to preclude the admission of any and all evidence attacking or challenging Prison Officials' decision to place Nifas on the RRL, as well as any character evidence against Prison Officials

---

[4] While Nifas appears to challenge the trial court's actions relative to playing both Secretary Wetzel's and EDS Moore Smeal's trial deposition for the jury, the evidence at issue—*i.e.*, evidence of the specific misconduct that caused Nifas to be placed on the RRL and use of the terms "slave" and "slavery"—was only discussed during EDS Moore Smeal's testimony. Accordingly, we will only focus on EDS Moore Smeal's trial deposition throughout the remainder of this opinion.

4

such as prior bad acts or any grievances or complaints filed against them. (O.R., Item No. 147, Prison Officials' Motion in Limine ¶¶ 1-10.) Three months later, on June 21, 2019, Prison Officials filed a motion for rulings on the objections raised during trial depositions, including the trial deposition of EDS Moore Smeal (Prison Officials' Motion for Rulings on Objections). (O.R., Item No.175, Prison Officials' Motion for Rulings on Objections ¶¶ 1-18.) Thereafter, on August 5, 2019, Nifas filed a motion in limine (Nifas's Motion in Limine), seeking to exclude his prison misconduct history from evidence at the time of trial and to prevent Prison Officials from using evidence of his prior misconducts to prove his character. (O.R., Item No. 182, Nifas's Motion in Limine ¶¶ 1-2.)

The trial court heard argument on various pretrial motions, including Prison Officials' Motion in Limine, Prison Officials' Motion for Rulings on Objections, and Nifas's Motion in Limine on August 21, 2019. After considering the parties' respective arguments, the trial court: (1) granted Prison Officials' Motion in Limine, thereby excluding from the record any and all evidence challenging Nifas's original placement on the RRL and any and all improper character evidence of prior bad acts and grievances or complaints filed against Prison Officials; and (2) granted Nifas's Motion in Limine, thereby prohibiting the parties from entering any evidence into the record relative to the specific misconducts that caused Nifas to be placed on the RRL but allowing the parties to demonstrate to the jury the length of time that Nifas was on the RRL. (O.R., Item No. 208, Argument Transcript at 19-20, 35-36; O.R., Item No. 200, Order of the Court dated August 21, 2019; O.R. Item No. 203, Order of Court dated August 21, 2019.) With respect to Prison Officials' Motion for Rulings on Objections, the trial court individually reviewed and discussed each of the objections made during EDS Moore Smeal's trial deposition. (C.R, Item

5

No. 208, Argument Transcript at 47-78.)  Of particular importance here is Prison Officials' attorneys' objections to Nifas's questions to EDS Moore Smeal regarding slavery and slaves.  (*Id*. at 75-77.)  Ultimately, the trial court sustained Prison Officials' attorneys' objections, concluding that Nifas's questions were inflammatory and irrelevant and adding that neither party could make any comments about racism, racist agendas, slavery, slaves, or slave labor and that any reference to slaves or slavery would be eliminated from the transcript.  (*Id*. at 75-77.)

The trial court held a three-day jury trial on September 9, 10, and 11, 2019.  (O.R., Item Nos. 244-47, Jury Trial Transcript.)  On the third and last day of the jury trial, before the videotape of EDS Moore Smeal's trial deposition was played to the jury, the trial court asked Nifas and Prison Officials' attorneys if EDS Moore Smeal's testimony was still necessary.  (O.R., Item No. 247, Jury Trial Transcript at 3.441.)  Nifas informed the trial court that he believed that it was necessary and requested that it be played for the jury.  (*Id*.)  Prison Officials' attorneys indicated, however, that they would be willing to agree to not play the videotape of EDS Moore Smeal's trial deposition.  (*Id*. at 3.442.)  Based on Nifas's request, the trial court concluded that the videotape of EDS Moore Smeal's trial deposition would be played for the jury.  (*Id*.)  Before doing so, however, Prison Officials' attorneys explained to the trial court how the videotape had been edited:

> [Prison Officials' attorney]:  [W]hat I did was I edited out where the objections were sustained.  Where the objections were overruled, I left that part in.  So I don't know if th[is trial c]ourt wishes to tell the jurors that any objections that they hear have been overruled ahead of time.
>
> [Trial court]:  I will talk to them about that so that they understand what is happening.  The purposes where—excuse me—the places where an objection was sustained, can you just describe for me how it was edited?
>
> [Prison Officials' attorney]:  They were muted—you can still see the picture, but there will be no sound.

6

[Trial court]: All right. So I'll also explain then to the jury that there may be points in time where although they can see the persons and maybe see their mouths moving and talking, but there is no sound—excuse me—that's because there was an objection made that was ruled on after the deposition. The objection was sustained; and therefore, that portion of the deposition was muted and they can't hear it. . . . Nifas?

[Nifas]: Your Honor, the portions of the depositions in which you ruled upon that was [sic] excluded from the record, did you review those as well?

[Trial court]: I have not reviewed those.

[Nifas]: Then those portions in these depositions that you ruled upon to be excluded from the jury in these depositions, Your Honor, that is a fact.

[Trial court]: There is a record of all that, yes. I'm not sure what you're asking me.

[Nifas]: I'm asking you that—will the jury hear portions of the deposition in which you have already ruled upon to be excluded from the jury?

[Trial court]: I don't believe so. I think [Prison Officials' attorney] just told us that those parts have been muted or redacted so that you can't hear it. You may see the people sitting there talking, but you won't be able to hear it. Isn't that what he just told us?

[Nifas]: Yes, Your Honor.

[Trial court]: So I'm not sure what your question is.

[Nifas]: So—so—so, Your Honor, if the portion that you ruled upon, if [Prison Officials' attorneys have not] done what [they] allege and what—at what stage may I object to—in case I would have to appeal the matter while the video is still running, I would just say objection, Your Honor, this is something that should be excluded from the record?

[Trial Court]: *Well, . . . Nifas, what I don't want to have happening is you blurting out objections the entire way through these videos.* We have a record. You can go back and look at the record. And if at some point after the trial you believe that they didn't properly redact something, you can raise it at that time. *But I don't—I don't want you to be having objections raised to objections during the playing of the video because then we're going to have to stop it and we're going to have to address it and the jury is going to be confused.* So I'm telling you right now your remedy there—and this is on the record—is to go back and look at the record that we've already made from the [m]otions

7

in [l]imine or the oral argument that we had on the objections; and if they didn't redact something like they should have, you can raise it. Understood?

[Nifas]: Yes.

(*Id*. at 3.443-.446 (emphasis added).) Soon after the explanation, the partially edited videotape of EDS Moore Smeal's trial deposition was played for the jury. (*Id*. at 3.507-.573.) Nifas did not object at any time while the jury viewed the videotape of EDS Moore Smeal's trial testimony. (*Id*.)

Instead, after the jury was dismissed for the day, Nifas moved for a mistrial, arguing that, despite Prison Officials' attorney's representations, the videotape of EDS Moore Smeal's trial testimony had not been properly redacted in accordance with the trial court's rulings on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections—*i.e.*, Prison Officials' attorneys failed to redact references to Nifas's misconduct history and slavery—thereby prejudicing his case. (*Id*. at 3.582-.583.) Nifas further alleged that the first time that he observed the purportedly redacted videotape of EDS Moore Smeal's trial testimony was when it was played to the jury, because the staff at SCI-Coal Township did not allow him to observe the redacted video prior to trial. (*Id*. at 3.582.) Prison Officials' attorneys responded that the basis for Nifas's objections to the videotape of EDS Moore Smeal's trial testimony was his questions to EDS Moore Smeal. (*Id*. at 3.584.) Prison Officials' attorneys contended that Nifas never informed the trial court that he was concerned about his own questions to EDS Moore Smeal during her trial testimony and that they only edited the videotape in accordance with the trial court's ruling on Prison Officials' Motion for Rulings on Objections.[5] (*Id*.) Prison

---

[5] We note that Prison Officials' attorneys' representations to the trial court are not entirely correct because Prison Officials' attorneys admitted in their brief to this Court that the jury heard Nifas's questions to EDS Moore Smeal about whether she "believe[s] in slavery[]" and if she

8

Officials' attorneys argued that Nifas had copies of the transcript from EDS Moore Smeal's trial testimony since early June 2019, that the transcripts follow the videotape of EDS Moore Smeal's trial testimony, and that the staff at SCI-Coal Township made every effort to ensure that Nifas had the opportunity to review the videotape of EDS Moore Smeal's trial testimony. (*Id*. at 3.584-.586.) While Nifas admitted that he had the transcript, he disputed that the staff at SCI-Coal Township allowed him to view the video and explained that had he known "that [Prison Officials] would use the part [of the videotape] that [the trial court] ordered to be excluded, [he] would have brought it to [the trial court's] attention." (*Id*. at 3.587.)

The trial court denied Nifas's motion for a mistrial, and the jury thereafter returned with a verdict in favor of Prison Officials. (*Id*. at 3.590, 3.635-.641.) Prior to issuing its order on Nifas's motion for a mistrial, however, the trial court informed Nifas, in pertinent part, that "if you want to compare the video[tape] played at trial to my rulings on [Nifas's Motion in Limine], and if you believe that the video[tape] played at trial was not properly redacted, then you may raise that issue on appeal." (*Id*. at 3.587-.588.) The trial court further stated that, "on the issue of misconduct history, again, you brought it up. I heard you in the video talking about 45 misconducts, the things you didn't want in there. You didn't want [Prison Officials] bringing it up . . . ." (*Id*. at 3.588.) The trial court continued that Nifas was the one that mentioned the specific misconducts during EDS Moore Smeal's trial testimony, and that Prison Officials' attorneys never made an issue out of his prison misconducts. (*Id*. at 3.589.) The trial court further explained:

---

"[w]ould . . . have a slave." (Prison Officials' Br. at 4-5, 7.) Prison Officials' attorneys admitted that this portion of Nifas's cross-examination of EDS Moore Smeal was "inadvertently" included on the edited videotape of her trial testimony. (*Id*.)

9

Nifas, I'm telling you right now, I haven't had the ability to compare my rulings on [Nifas's Motions in Limine and Prison Officials' Motion for Rulings on Objections] with the redacted video[tape]; and as I told you, if you have an issue with it, you can compare the two and specifically raise on appeal the places where the information that I ruled should be excluded was not excluded or redacted.

(*Id*. at 3.590.)

Subsequent thereto, Nifas filed his Post-Trial Motion, seeking a new trial. Attached to Nifas's Post-Trial Motion was a "Certificate of Service," wherein Nifas represented that he had sent copies of the motion to the Somerset County Prothonotary's Office (Prothonotary's Office) and Prison Officials' attorneys on September 18, 2019. (O.R., Item No. 235, Post-Trial Motion, *Certificate of Service*.) The Prothonotary's Office did not, however, receive Nifas's Post-Trial Motion until September 25, 2019. (*Id*. at 1.) As to the substantive basis for his Post-Trial Motion, Nifas argued that Prison Officials' attorneys were directed to exclude—*i.e*., edit to remove—references in EDS Moore Smeal's trial testimony relating to his specific inmate misconducts. (*Id*. at 3.) Nifas emphasized that the trial court's order granting Nifas's Motion in Limine expressly provided that "neither party shall enter evidence of the specific misconducts that caused [Nifas] to be placed on the RRL." (*Id*.) Nifas contended that Prison Officials' attorneys intentionally violated the trial court's order by failing to properly redact the videotape of EDS Moore Smeal's trial testimony, and, as a result, the jury heard his highly inflammatory and prejudicial remarks. (*Id*.) Nifas further argued that a new trial was necessary to remedy the prejudice that he suffered. (*Id*. at 3, 5.)

The trial court heard argument on Nifas's Post-Trial Motion on December 12, 2019. (O.R., Item No. 257, Argument Transcript.) At that time, Prison Officials' attorneys argued that they did not intentionally violate the trial court's order granting Nifas's Motion in Limine. (*Id*. at 23.) The crux of their

argument focused on Nifas's ability to review the videotape of EDS Moore Smeal's trial testimony prior to trial, explaining that Nifas had the transcript from EDS Moore Smeal's trial testimony in June 2019 and had the opportunity to review the videotape of EDS Moore Smeal's trial testimony at SCI-Coal Township on August 19, 2019, and August 20, 2019. (*Id*. at 24-26.) Significantly, however, Prison Officials' attorneys did not argue (nor is there any evidence in the record to establish) that Nifas had been given the opportunity to review the redacted videotape of EDS Moore Smeal's trial testimony after the trial court ruled on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections on August 21, 2019. (*Id*. at 25-26.)

The trial court ultimately denied Nifas's Post-Trial Motion for two reasons. First, the trial court concluded that Nifas's Post-Trial Motion was untimely, because it was not filed until September 25, 2019, which the trial court concluded was ten days beyond the deadline to file such motion. (*Id*. at 30-31.) Second, the trial court concluded that "all of the testimony and evidence that was permitted to come in at trial was proper and lawful[] and none of that testimony or evidence affected the jury's verdict[] in this case; . . . therefore, there is no proper or lawful basis to disturb the jury's verdict[.]" (*Id*. at 37.) In reaching this conclusion, the trial court reasoned:

> I agree with [Prison Officials' attorneys] that at the beginning of each of the video-depositions that were conducted for use at trial, [Nifas] was advised . . . that all objections must be raised and placed on the record; and, in fact, there were numerous objections made on the record by both [Nifas] and [Prison Officials' attorneys].
>
> As [Prison Officials' attorneys] pointed out, [they] filed a motion indicating what objections were raised in the depositions and that needed to be addressed and decided prior to trial. The motion was very specific pointing out line by line the objections that were raised and that needed to be addressed prior to trial; and, in fact, th[is trial c]ourt held a proceeding and went through those one by one and placed rulings on the record.

11

. . . Nifas clearly had the same opportunity to ask th[is trial c]ourt to address any objections that he made, but he did not do that nor did he file any type of motion or pleading to address that.

I will also indicate that the majority of, if not all[]of[,] the alleged objectionable testimony or evidence that . . . Nifas is now complaining about was elicited by [Nifas] himself. It wasn't raised or introduced by [Prison Officials' attorneys], but again was raised or elicited by [Nifas] himself.

Additionally, it's clear that [Nifas] had access to the deposition transcripts as well as the videotaped depositions prior to trial. He, therefore, was aware of the content of the depositions and, again, could have asked th[is trial c]ourt to address anything that he believed objectionable prior to trial . . . .

[A]t trial, although I specifically told [Prison Officials' attorneys] and . . . Nifas I did not want them raising objections during the playing of the videotape or videotapes because I believed it would have made the trial so disjointed and confuse the jurors[,] clearly, . . . Nifas . . . could have requested a conference with th[is trial c]ourt outside the eyes and ears of the jury, even at the conclusion of those videotaped depositions, to address any issues that [he] believe[d] arose that would have been in conflict with my rulings on [the m]otions in [l]imine or [p]retrial [o]rders. And had [Nifas] done that and I believed that [he was] correct, I then could have addressed it and provided the jury with a limiting instruction or some type of instruction telling them to either disregard evidence or not to consider evidence when they deliberated.

However, that was not done and the time to do that would have been at trial. The law clearly requires all parties and [c]ounsel to raise and preserve on the record any issues that they believe are appealable issues. And that needs to be done either during the trial or immediately after the trial. That wasn't done here.

(*Id*. at 32-36.) This appeal followed.[6]

---

[6] This Court's standard of review with regard to a trial court's grant or denial of a motion for post-trial relief is limited to determining whether the trial court abused its discretion or committed an error of law. *City of Phila. v. Benedetto*, 801 A.2d 1276, 1278 n.5 (Pa. Cmwlth. 2002).

## II. ISSUES

Nifas raises three issues for our review.[7] First, Nifas contends that the trial court committed an error of law by concluding that his Post-Trial Motion was untimely filed. Second, Nifas argues that the trial court committed an error of law and/or abused its discretion by denying his Post-Trial Motion because the trial court improperly allowed excerpts of the videotape of EDS Moore Smeal's trial testimony that reference his prior prison misconduct history and the words "slave" and "slavery" to be played for the jury in violation of the trial court's orders granting Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections. Third, Nifas submits that the trial court committed an error of law and/or abused its discretion by denying his Post-Trial Motion because the trial court improperly granted Prison Officials' Motion in Limine, thereby excluding evidence of prior complaints and grievances directed against Prison Officials from the record as irrelevant and prejudicial.

## III. DISCUSSION

### A. Timeliness of Nifas's Post-Trial Motion

Nifas contends that the trial court committed an error of law when it concluded that his Post-Trial Motion was untimely. A party has ten days from the date of the jury verdict to file any post-trial motions. Pa. R.Civ. P. 227.1(c)(1).[8] If the end of the ten-day deadline occurs on a Saturday or Sunday, then the post-trial motion must

---

[7] For ease of discussion, we have reordered Nifas's issues.

[8] "[T]he interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law." *Gray v. Buonopane*, 53 A.3d 829, 834 (Pa. Super. 2012) (alteration in original) (quoting *Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 32 A.3d 800, 808 (Pa. Super. 2011), *aff'd*, 91 A.3d 680 (Pa. 2014)), *appeal denied*, 64 A.3d 632 (Pa. 2013). Our standard of review is de novo and our scope of review is plenary. *D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.*, 71 A.3d 915, 918 (Pa. Super. 2013).

13

be filed on the next business day. Pa. R.Civ. P. 106(b). Here, the jury's verdict was announced on Wednesday, September 11, 2019, at the conclusion of the trial, in open court, with Nifas and Prison Officials' attorneys present.[9] (O.R., Item No. 245, Jury Trial Transcript at 3.634-.642.) Ten days later would have been Saturday, September 21, 2019, but, based on Pennsylvania Rule of Civil Procedure 106(b), Nifas had until the next business day, or Monday, September 23, 2019, to file his Post-Trial Motion with the trial court.

The trial court, relying upon the date on which Nifas's Post-Trial Motion was received at the Prothonotary's Office—*i.e.*, September 25, 2019—concluded that Nifas's Post-Trial Motion was untimely. We respectfully disagree. Nifas is incarcerated, which necessarily inhibits his ability to mail documents directly to the courts, given that he cannot place the documents in a mailbox on the street or take the documents to a United States Post Office. Pennsylvania courts, "[r]ecognizing [that] the limitations of incarceration apply equally to all *pro se* inmates[,] . . . apply the prisoner mailbox rule in a number of legal contexts." *Kittrell v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2014). "Under the prisoner mailbox rule, a prisoner's *pro se* [filing] is deemed filed at the time it is given to prison officials or put in the prison mailbox." *Id.* at 1096. "At the heart of the 'prisoner mailbox rule' are the constitutional notions of due process and fundamental fairness." *Id.* (quoting *Pettibone v. Pa. Bd. of Prob. & Parole*, 782 A.2d 605, 608 (Pa. 2001)). Applying

---

[9] Nifas argues that the ten-day period to file his Post-Trial Motion began "upon receiving the [o]rder of the [trial c]ourt for the verdict on September 18, 2019." (Nifas's Br. at 10). Nifas, while citing to Pennsylvania Rule of Civil Procedure (Rule) 227.1(c)(1), mistakenly applies the language of Rule 227.1(c)(2) to his situation. Rule 227.1(c)(2) provides a litigant with the right to file post-trial motions within ten days of the "filing of the decision" in non-jury trial situations. Rule 227.1(c)(2) does not, however, apply to this case, because this case involved a jury trial, not a non-jury trial.

14

the prisoner mailbox rule here, Nifas had until Monday, September 23, 2019, to either give his Post-Trial Motion to prison officials at SCI-Coal Township or place it in the prison mailbox. The certificate of service attached to Nifas's Post-Trial Motion indicates that Nifas sent copies of his Post-Trial Motion to the Prothonotary's Office and Prison Officials' attorneys on September 18, 2019, thus meeting the September 23, 2019 deadline. Prison Officials do not appear to dispute that the date included on the certificate of service is the date that Nifas either gave it to prison officials or placed it in the prison mailbox. (*See* Prison Officials' Br. at 8, n.1.) Consequently, the trial court committed an error of law by concluding that Nifas's Post-Trial Motion was untimely filed.

**B. Videotape of EDS Moore Smeal's Trial Testimony**

Nifas submits that the trial court committed an error of law and/or abused its discretion by allowing the videotape of EDS Moore Smeal's trial testimony to be played for the jury without ensuring that such videotape had been properly redacted to exclude any references to his specific prison misconducts and slavery in accordance with the trial court's rulings on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections. Nifas argues that the only way to correct the substantial prejudice that occurred to his case as a result of such errors is to grant a new trial. In response, Prison Officials argue that the trial court did not commit reversible error by permitting the videotape of EDS Moore Smeal's trial testimony to be played for the jury because: (1) whatever prejudice Nifas may have suffered by the introduction of the excerpts of EDS Moore Smeal's trial testimony relating to the details of his prison misconduct history and the use of the inflammatory terms "slave labor" and "slavery" was due to Nifas's own actions as it was Nifas who, through his questions to EDS Moore Smeal on cross-examination,

15

referenced his prior prison misconduct history and slavery and slaves; (2) Prison Officials, not Nifas, objected to the use of the terms "slave labor" and "slavery," and Nifas could have filed his own motion seeking to have the trial court rule on the objections to EDS Moore Smeal's trial testimony but failed to do so; (3) Prison Officials offered to not play the videotape of EDS Moore Smeal's trial testimony for the jury at the time of trial, but Nifas rejected such offer; (4) Nifas had a copy of the transcript of EDS Moore Smeal's trial testimony and had the opportunity to review the videotape of EDS Moore Smeal's trial testimony and could have brought his concerns about his questioning of EDS Moore Smeal to the trial court prior to trial; and (5) Nifas could have asked the trial court to stop the videotape of EDS Moore Smeal's trial testimony at the time of the offending remarks and to give a curative instruction to the jury, but, instead, he waited until the entire videotape had been played and the jury had been excused before raising his concerns.

"It is a fundamental and longstanding precept that the decision to order a new trial is one that lies within the discretion of the trial court." *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1184 (Pa. 1993). "The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness[,] or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000) (quoting *Dornon v. McCarthy*, 195 A.2d 520, 522 (Pa. 1963)). An appellate court must follow a two-step analysis in its review of a trial court's determination to grant or deny a new trial. *Id.* at 1122. The appellate court must first examine the trial court's decision to determine if one or more errors occurred. *Id.* If an error occurred, the appellate court must determine whether the trial court abused its discretion in ruling on the

16

request for a new trial. *Id.* at 1123. "A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." *Id.* "The moving party must demonstrate that he or she has suffered prejudice from the [error]." *Carletti v. Dep't of Transp.*, 190 A.3d 766, 780 (Pa. Cmwlth. 2018), *appeal denied*, 204 A.3d 370 (Pa. 2019). "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id.*

The Pennsylvania Supreme Court has held that not every error by a trial court warrants a new trial, and an appellate court will not reverse a decision for harmless error. *Paley v. Trautman*, 177 A. 819, 820 (Pa. 1935). "It is well settled that 'an appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record.'" *Cmwlth. v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (quoting *Cmwlth. v. Parker*, 919 A.2d 943, 948 (Pa. 2007)), *cert. denied*, 569 U.S. 972 (2013). "The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Cmwlth. v. Thornton*, 431 A.2d 248, 251 (Pa. 1981). "Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.'" *Id.* (alteration in original) (quoting *Lutwak v. United States*, 344 U.S. 604, 619 (1953)).

Here, based on our thorough examination of the record in this case, we believe that the trial court made three errors relative to the playing of the videotape of EDS Moore Smeal's trial testimony for the jury. The trial court made its first error when it relied solely on Prison Officials' attorneys' representations that the videotape of EDS Moore Smeal's trial testimony had been redacted in accordance with the trial

17

court's pretrial orders. Prison Officials' argument that Nifas was provided with opportunities to review the transcript and videotape of EDS Moore Smeal's trial testimony before trial and could have objected to its content is somewhat disingenuous. Even if we were to accept as true that Nifas received a copy of the transcript of EDS Moore Smeal's trial testimony in June 2019 and that Nifas had been given the opportunity to review the videotape of EDS Moore Smeal's trial testimony on August 19, 2019, and August 20, 2019, the trial court did not rule on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections until August 21, 2019. Thus, Prison Officials' attorneys could not have edited the videotape of EDS Moore Smeal's trial testimony to remove those matters excluded by the trial court until after August 21, 2019. Significantly, there is a lack of evidence in the record indicating that arrangements were made for Nifas to review the videotape of EDS Moore Smeal's trial testimony after Prison Officials purportedly edited it in accordance with the trial court's rulings on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections. Without having been given this opportunity, there was no way for Nifas to know whether the videotape had been properly edited until it was played for the jury at trial.

Additionally, the record clearly establishes that Nifas had concerns about whether the videotape of EDS Moore Smeal's trial testimony was properly edited in accordance with the trial court's pretrial orders and that he brought the concerns to the trial court's attention before the videotape was played for the jury. (O.R., Item No. 247, Jury Trial Transcript at 3.443-.446.) At that time, the trial court candidly admitted that it did not review Prison Officials' attorneys' edits to the videotape. (*Id.* at 3.444.) We believe that, at this juncture, based on Nifas's questions to the trial court, it would have been prudent to allow Nifas the opportunity to review the

18

edited videotape prior to showing it to the jury rather than informing Nifas that he would need to raise the issue on appeal.

The trial court made its second error when it directed Nifas to not object on the record while the videotape of EDS Moore Smeal's trial testimony was played for the jury and, instead, instructed him to raise his concerns on appeal. We recognize that the trial court certainly has the right to minimize interruptions during the playing of videotaped testimony during trial, but, here, the trial court expressed in clear terms to Nifas that he could not "blurt[] out objections the entire way through these videos" because the trial court did not want to stop the videotape or confuse the jury. (O.R., Item No. 247, Jury Trial Transcript at 3.445.) The trial court's statements in this regard resulted in short circuiting the procedural process by denying Nifas the opportunity to alert the trial court of his objection at a time when he could have prevented the jury from hearing any further inadmissible evidence or at a time when the trial court could have provided the jury with a curative jury instruction directing the jury to ignore any references to Nifas's prior prison misconducts and slaves or slavery.

The trial court committed its third error when it chose not to enforce its pretrial rulings on Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections and allowed the jury to hear statements concerning Nifas's specific prison misconducts and the terms "slaves" and "slavery" when the videotape of EDS Moore Smeal's trial testimony was played. Both Prison Officials and the trial court would like us to ignore this error because it was Nifas, through his questioning of EDS Moore Smeal, that introduced the objectionable statements. We are not persuaded by their argument. While it may be true that Nifas's questioning of EDS Moore Smeal was the reason that these statements were included with EDS Moore

19

Smeal's testimony, it is equally true that the parties attempted to ensure that these statements did not get to the jury through the filing of Nifas's Motion in Limine and Prison Officials' Motion for Rulings on Objections. The trial court clearly recognized the danger of unfair prejudice, confusion of the issues, and the potential of misleading the jury that were inherent with the jury's exposure to these statements, because the trial court ruled to exclude these statements when it granted Nifas's Motion in Limine and sustained certain objections made during EDS Moore Smeal's trial testimony. The record supports that the trial court intended to make Nifas's statements relative to slavery and slaves and his specific prison misconduct history something that the jury could not consider in reaching its verdict but then reversed its position, while blaming Nifas for the statements/information coming to the jury's attention.

In light of these errors—*i.e.*, relying solely on the Prison Officials' attorneys' representations about the edits to the videotape of EDS Moore Smeal's trial testimony, directing Nifas not to object during the playing of such videotape, and not enforcing its pretrial orders—we must now determine whether the trial court abused its discretion when it denied Nifas's Post-Trial Motion seeking a new trial. It is Nifas's burden to demonstrate that he has suffered prejudice from these errors sufficient to warrant a new trial.

In an effort to meet his burden of proof, Nifas directs our attention to *Mirabel v. Morales*, 57 A.3d 144 (Pa. Super. 2012). In *Mirabel*, the plaintiff's counsel, during closing argument, attempted to appeal to the jury's racial composition by implying that the defendants were not represented by "brothers" and that the defendants treated the plaintiff poorly because she was Hispanic. *Mirabel*, 57 A.3d at 148. Additionally, the plaintiff's counsel mentioned the size and wealth

of a defendant company in violation of a pretrial order. *Id.* At the conclusion of the parties' closing arguments, the defendants objected to the plaintiff's counsel's inappropriate statements and asked the trial court to declare a mistrial. *Id.* at 149. Rather than declaring a mistrial, however, the trial court issued a curative instruction, directing the jury to disregard the plaintiff's counsel's statements. *Id.* Following deliberations, the jury returned with a verdict in favor of the plaintiff. *Id.* The defendants filed a post-trial motion with the trial court, seeking a new trial on both liability and damages. *Id.* The trial court partially granted the defendants' post-trial motion, directing a new trial only on damages. *Id.* The defendants appealed to the Superior Court, which reversed and remanded the matter to the trial court for a new trial on both liability and damages. *Id.* at 155. In so doing, the Superior Court concluded that the trial court abused its discretion by limiting the new trial solely to the issue of damages because the prejudicial statements "could have affected the jury's decision with regard to both liability and damages" and the wealth of the defendant company "may well have impacted on the jury's decision." *Id.* at 152 (quoting *Baker v. Pa. Nat'l Mut. Cas. Ins. Co.*, 536 A.2d 1357, 1362 (Pa. Super. 1987), *aff'd*, 559 A.2d 914 (Pa. 1989)). The Superior Court also concluded that when "a party intentionally violates a pre[]trial order, the only remedy is a new trial." *Id.* at 151.

Nifas also directs our attention to *Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311 (Pa. Super. 2017), where the plaintiff's counsel violated a pretrial order that precluded the introduction of evidence or argument at trial about the defendants' allegedly inadequate manpower. *Buttaccio*, 175 A.3d at 313, 319. Despite the pretrial order, the plaintiff's counsel repeatedly delved into the subject of manpower during trial. *Id.* at 319-20. The jury returned with a verdict

in favor of the plaintiff. *Id.* at 314. The defendants moved for a mistrial and filed a post-trial motion, both of which the trial court denied. *Id.* The defendants appealed, and the Superior Court reversed the trial court's order, in relevant part, because the plaintiff's counsel repeatedly "drew attention to a theory that the jury never should have heard and invited the jury to decide the case on an improper basis." *Id.* at 321. The Superior Court also noted the "sheer number of counsel's improper references prejudiced [the defendants]" and that there were too many improper references for them to be harmless. *Id.*

After review, we are not persuaded that *Mirabel* and *Buttaccio* are dispositive in this matter or that Nifas has even met his burden concerning prejudice. First, we do not believe that Nifas was prejudiced when the jury heard the words "slave labor" and "slavery" based on his questions to EDS Moore Smeal. By using an inflammatory word such as "slavery" in his questioning of EDS Moore Smeal to describe the "free labor" that he was required to perform as part of the step-down plan, Nifas sought to place Prison Officials in a negative light as oppressors and himself as a victim. Thus, Nifas has not convinced this Court that he was prejudiced by this particular error by the trial court.

Second, we do not believe that Prison Officials' attorneys, unlike their counterparts in *Mirabel* and *Buttaccio*, intended to violate the trial court's ruling on Nifas's Motion in Limine. While Prison Officials' attorneys were partially responsible for the jury hearing the number and categories of Nifas's misconducts by not redacting all of the information required by the trial court's ruling on Nifas's Motion in Limine, the record does not support a willful act or a litigation strategy to unfairly prejudice Nifas's case. Additionally, unlike in both *Mirabel* and *Buttaccio*, here, the improper information relative to Nifas's prior prison misconducts was not

22

repeatedly stated to the jury, did not have racist overtones that would likely have swayed the jury's verdict, and amounted to nothing more than a brief listing of misconducts committed by Nifas. Given that this action pertains to Nifas's inclusion on the RRL, it would be a stretch to reason that the jury would be shocked or surprised to learn that Nifas had received misconducts. Moreover, the details of the misconducts were not shared with the jury, thereby lessening the likelihood of any resulting prejudice.

Third, this case involved a jury trial that was conducted over three days. During the trial, the inadmissible portion of EDS Moore Smeal's trial testimony constituted, at most, a few minutes. Those few minutes must be placed into context with this record that establishes that the jury also heard testimony from ten other witnesses, opening and closing arguments, and the trial court's opening remarks and jury charge. While the amount of time a jury hears an improper statement does not directly equate to the prejudice involved, we believe that it is an important factor to consider when weighing the potential influence the inappropriate remarks had on the jury's verdict. Thus, we conclude that Nifas failed to demonstrate sufficient prejudice to warrant a new trial, and, consequently, the trial court did not abuse its discretion when it denied his post-trial motion.[10]

---

[10] We need not consider Nifas's remaining issue on appeal—*i.e.*, whether the trial court improperly granted Prison Officials' Motion in Limine, thereby excluding evidence of prior complaints and grievances directed against Prison Officials from the record at the time of trial, because Nifas waived this issue for the purposes of this appeal by admitting to the trial court at the time of the August 21, 2019 argument that he did not oppose such motion. (*See* O.R., Item No. 208, Argument Transcript at 19.) Nifas had an opportunity to oppose the motion before the trial court. Having not done so, Nifas cannot raise an objection to the motion for the first time before this Court. *See Fatzinger v. City of Allentown*, 591 A.2d 369, 371 (Pa. Cmwlth. 1991) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."), *appeal denied*, 602 A.2d 862 (Pa. 1992).

## IV. CONCLUSION

Accordingly, we reverse the trial court's order as it relates to its determination that Nifas's Post-Trial Motion was untimely filed and affirm the trial court's order in all other respects.

P. KEVIN BROBSON, Judge

Judge Covey concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rasheed Nifas,                  :
             Appellant     :
                      :
         v.            :    No. 1782 C.D. 2019
                      :
John E. Wetzel, Shirley Moore Smeal,  :
Daniel Burns, Jeffrey Witherite,     :
Gerald Rozum, Daniel Gehlmann,    :
Joseph Mazurkiewicz, Allen Joseph,  :
Melissa Hainsworth and Joseph      :
Bianconi                     :

# **O R D E R**

AND NOW, this 23rd day of December, 2021, the order of the Court of Common Pleas of Somerset County (trial court) is hereby REVERSED, in part, and AFFIRMED, in part. The trial court's order is REVERSED only to the extent that it determined that Appellant's motion for post-trial relief was untimely filed, and it is AFFIRMED in all other respects.

_____
P. KEVIN BROBSON, Judge